1                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
2                       ORLANDO DIVISION

3

4    . . . . . . . . . . . . . . . . .
     EMILIO SAN MARTIN, ET AL.,      :
5                                     :
             Plaintiffs,             :
6                                     :
                  v.                 :    CASE NUMBER 6:20-cv-1769
7                                     :
     LOCKHEED MARTIN CORPORATION,    :
8                                     :
             Defendant.              :
9    . . . . . . . . . . . . . . . . .
     PHYLISS GRAYSON, individually,  :
10   and on behalf of all others     :
     similarly situated, ET AL.,     :
11                                    :
             Plaintiffs,             :
12                                    :
                  v.                 :    CASE NUMBER 6:20-cv-1770
13                                    :
     LOCKHEED MARTIN CORPORATION,    :
14                                    :
             Defendant.              :
15   . . . . . . . . . . . . . . . . .

16

17                      Orlando, Florida

18                    December 15, 2020

19                     1:31 - 2:24 p.m.

20

21        TRANSCRIPT OF RULE 16 PRETRIAL CONFERENCE

22     BEFORE THE HONORABLE ROY B. DALTON, JR.
                UNITED STATES DISTRICT JUDGE
23

24

25

```
 1    APPEARANCES:

 2

 3    Counsel for Plaintiffs Emilio San Martin and Phyliss

 4    Grayson, et al.:

 5                                  T. Michael Morgan

 6                                  Rene F. Rocha, III

 7                                  Frank M. Petosa

 8                                  Marie N. Appel

 9                                  Michael F. Ram

10

11    Counsel for Defendant Lockheed Martin Corporation:

12                                  David B. Weinstein

13                                  Christopher Torres

14                                  Ryan T. Hopper

15

16

17

18

19

20

21    Court Reporter:     Amie R. First, RDR, CRR, CRC, CPE
                          Federal Official Court Reporter
22                        401 West Central Boulevard, Suite 4600
                          Orlando, Florida  32801
23                        AmieFirst.CourtReporter@gmail.com

24    Proceedings recorded by Realtime Stenography.

25    Transcript produced by Computer-Aided Transcription.
```

1          **P R O C E E D I N G S**

2                    * * * * *

3          (Court called to order.)

4          THE DEPUTY CLERK:  This is Case 6:20-cv-1769,

5    Emilio San Martin versus Lockheed Martin Corporation.

6          And 6:20-cv-1770, Phyliss Grayson versus Lockheed

7    Martin Corporation.

8          Counsel, would you please state your appearance

9    starting with the plaintiff.

10         MR. MORGAN:  Your Honor, Mike Morgan for the

11   plaintiff, as well as on the Zoom call we have Michael Ram,

12   Marie Appel, Frank Petosa, and Rene Rocha.

13         THE COURT:  All right.  Will you be handling any

14   argument, Mr. Morgan, or --

15         MR. MORGAN:  The majority, Your Honor, unless

16   there's something super specific as in regards to the class

17   and then I would defer to Michael Ram.

18         THE COURT:  Okay.  Great.  Thank you.

19         MR. WEINSTEIN:  Good afternoon, Your Honor.  David

20   Weinstein with Greenberg Traurig to represent Lockheed

21   Martin.  To my right, my partner, Chris Torres, Ryan

22   Hopper; and Joel Nagler, who is in-house counsel, Your

23   Honor, at Lockheed Martin.

24         THE COURT:  Welcome to all of you.  Welcome back,

25   especially Mr. Hopper.  Nice to see you.

1          MR. HOPPER:  Nice to see you too, Your Honor.

2          THE COURT:  Part of the reason I wanted to get you

3   all here is I want you to educate me a little bit about --

4   before we start talking about trying to get the schedule

5   set, I want you to educate me, Mr. Morgan, or somebody on

6   your team, as to why it is that we have the two cases.

7   Tell me, what's the rationale behind the individual cases

8   brought and then the class action brought together.

9          I need to understand that better so I can figure

10  out whether or not they need to be on the same track,

11  whether they need to be consolidated.  Help me understand

12  why you're pursuing it the way you are.

13         MR. MORGAN:  Sure.  You want me to speak there,

14  Your Honor.

15         THE COURT:  If you come to the podium, yes, sir.

16  It's a little easier for everybody to hear you.

17         MR. MORGAN:  So to Your Honor's question, the

18  reason that we pursued it on two separate tracks is really

19  physical injury suffered at this point versus future injury

20  and medical monitoring because of exposure.

21         And the injury victims, obviously, wouldn't fit

22  into the class mechanism because there's nothing that we

23  would be able to class for the multiple sclerosis and the

24  different cancers and things that have been identified on

25  the individual plaintiffs.

```
 1          THE COURT:  All right.  So that helps me at least

 2  with one of my questions, which was insofar as the class

 3  action is concerned, you're not anticipating seeking any

 4  individualized damages for personal injuries or death

 5  associated with toxic exposure in the class?

 6          MR. MORGAN:  No, Your Honor.

 7          THE COURT:  So that's just in the individual case?

 8          MR. MORGAN:  Correct.

 9          THE COURT:  Okay.  So help me understand from the

10  plaintiffs' point of view how the evidence is likely to

11  overlap in terms of the cases.  It seems to me that there's

12  going to be a large amount of duplication at least on the

13  liability aspect of the case from the class to the

14  individual.

15          So while I can certainly understand and appreciate

16  the need for an individualized determination of the

17  injuries and the damages associated with the injuries, if

18  any, of the parties, plaintiff in that case, what's

19  different about the liability facts, if anything?

20          MR. MORGAN:  I mean, the main difference I would

21  foresee in the liability is just past versus ongoing,

22  whereas, the class would anticipate things going forward,

23  the individual cases, it's already -- the die is already

24  cast in that form.

25          THE COURT:  Well, I guess the question I have from
```

```
1    a practical standpoint, why wouldn't it make sense to try

2    the liability aspect of the cases together and then if

3    there's a liability verdict in your favor, then take up the

4    damages issues of the plaintiffs in their case?

5            I'll tell you what I'm not inclined to do.  I'm

6    not inclined to try a complicated toxic tort case twice,

7    once for the class and once for the individualized

8    plaintiffs if it can be avoided.

9            MR. MORGAN:  It's really not something we had

10   considered up until you mentioned it.  So I don't know.  I

11   don't have an answer for you off the top of my head as to

12   what the pros and cons of trying the liability aspects of

13   this case together would be.  And I, frankly, can't give

14   you a good answer at this point.

15           THE COURT:  Okay.  Let me hear from your

16   colleagues on the other side and see if they have any

17   thoughts on the matter in terms of the efficient use of

18   everyone's time.

19           Mr. Morgan, if you'll do me a favor.  That little

20   cover on the microphone, will you take that off and toss it

21   in the trash.  And then Mr. Weinstein is going to speak.

22   It looks like he is.  I'll get him to replace it when he

23   comes up.

24           MR. MORGAN:  Okay.

25           THE COURT:  Good afternoon, Mr. Weinstein.  How
```

1    are you?

2         MR. WEINSTEIN:  Good afternoon, Judge.  And

3    yourself?

4         THE COURT:  Well.  Thanks.

5         MR. WEINSTEIN:  And it's in that black box here?

6         THE COURT:  Yeah, there should be one in there.

7    If we haven't exhausted our supply.

8         MR. WEINSTEIN:  And you have not, Your Honor.

9    Strange times in which we live, Judge.

10        We see a lot of differences, Your Honor, between

11   the proofs in these cases.  And there's differences derived

12   mainly from the class definition which is extraordinarily

13   expansive.

14        So here the plaintiffs have defined a class that

15   purportedly comprises a five-mile radius, which you can

16   check my math, is almost 80 squares miles of the Orlando

17   area, 80 square miles.

18        And a brief look at the census stats, Judge, and

19   the zip codes within that circle indicates that the present

20   residents are probably in the neighborhood of a quarter of

21   a million people.  And, of course --

22        THE COURT:  Let me -- at the risk of interrupting

23   you, which I've already done, where do the individual

24   plaintiffs reside within that confine?

25        MR. WEINSTEIN:  Some don't even live within it,

1   Judge, but they all worked apparently, except for one minor

2   plaintiff --

3          THE COURT:  It's all from the Golf Channel, right?

4          MR. WEINSTEIN:  Yes, that's exactly right, which

5   is about a mile, Judge, to the north, northeast of the

6   facility.

7          THE COURT:  I remember that now.

8          MR. WEINSTEIN:  This is an air emissions case,

9   Judge.  If you think about the way these cases lay out,

10  it's air modeling, fate and transport of contaminant.

11         So it's my understanding, in the middle of the

12  Lockheed Martin facility, the Golf Channel is here, about a

13  mile away.  The class area expands 80 miles in essentially

14  every direction.  So the scientific proofs are going to be

15  very different.

16         And the other component of this is temporal,

17  Judge, which is that they are claiming a class area of

18  35 years dating back to 1985.  So, for example, if a baby

19  was born in the class area in 1985 and moved out in 1986,

20  she or he would be in the class area even though he hasn't

21  breathed or she hasn't breathed a molecule of air in that

22  vicinity for 34 years.  Similarly, if someone was 50 years

23  old in 1985, not an uncommon phenomenon surely, they are 85

24  today.  So these folks are just all over the board

25  different in terms of ages, genders, previous medical

1    conditions, where they live, where they work.

2         And within the class area, Judge, is, in addition

3    to the residents, think about -- you know that area well,

4    I'm sure, Your Honor -- all the apartment complexes out

5    there with thousands of units that have one-year leases.

6    So we could have a million or more people in the class.

7         And it also encompasses, Judge, Universal Studios

8    with 12,000 people, SeaWorld, Millenia Mall, all the hotels

9    and restaurants on I-Drive.  And the way that they've got

10   it defined, it's anybody that lived or worked in that area

11   for at least one year.  So if in 1986 someone bussed tables

12   at a restaurant on I-Drive for a year, they're in the class

13   area.

14        Very, very different than 13 specifically

15   identified human beings who worked mostly in one building a

16   mile from the facility.

17        THE COURT:  Well, what suggestions, if any, do you

18   have -- surely this can't be the first time that it's

19   occurred to all the lawyers in this case that there might

20   be a more efficient way potentially to proceed than two

21   cases of this complexity on separate tracks.

22        I know you've proposed different timetables for

23   them, which is I guess the first clue that I had that maybe

24   you all hadn't focused on that.  But I'm very focused on it

25   in terms of trying to not only conserve the Court's

1    resources but also the resources of the parties in terms of

2    trying to figure out a way to at least achieve some sort of

3    efficiencies in light of the -- well, I appreciate your

4    argument with respect to the differences, and I don't mean

5    to be dismissive of that.  It's difficult to avoid the

6    overlap.

7            MR. WEINSTEIN:  No, and I don't think it should be

8    avoided, Your Honor.  And we're acutely aware of the

9    Court's -- or anticipated the Court's concerns.

10           So we differentiate the Lockheed Martin facility

11   side of the case, you know, from the plaintiffs' side of

12   the case.  And in terms of the facility, you know, when it

13   was operating, Judge, what it was making there, what kinds

14   of emissions, if any, came from the facility, where those

15   emissions went, within reason, we think are issues that

16   overlap both cases.

17           And we had agreed with the other side the

18   depositions in either case could be cross-designated and

19   used in both.  But we certainly don't need -- we don't

20   believe, Judge, that if they're deposing an engineer at the

21   facility in one case that that deposition needs to take

22   place in the other.

23           All of the common proof, Your Honor, about the

24   operations of the facility we think are the same in both

25   cases.  Where we differ is on fate and transport, exposure,

1    dose, uptake, you know, resulting injury, if any, we think

2    is quite different.

3           And, Judge, if you'll indulge me for a moment, we

4    can't find a federal case in the state of Florida in which

5    a medical monitoring class has been certified.  I'm not

6    saying, Your Honor, that there isn't an unreported decision

7    out there, but, if there is one, we can't find it.

8           And the big difference in the approaches between

9    the plaintiffs and the defendants is, you know, we have

10   proposed a one-year schedule to the close of briefing on

11   class certification because it's the driver.  If that goes

12   away, then we're dealing with one plaintiff in Grayson,

13   thirteen plaintiffs in San Martin, and a very manageable

14   case.

15          If the class was certified in its totality, we

16   think there would be at least a million people in Grayson,

17   and there could be, obviously, somewhere in between,

18   depending on the Court's decision.

19          So the way we've got it ramped up, Your Honor, is

20   a one-year run to the close of briefing and class

21   discovery, after which we're going to know, are we trying a

22   single plaintiff case, or are we trying a case that

23   involves a million people.

24          And there are two Middle District cases, one by

25   Judge Conway and one by Judge Lazzara, both which strongly

1    suggest that it's next to impossible to certify one of

2    these classes, that the individualized issues just

3    overwhelm -- you don't get past Rule 23(a) or 23(b) in the

4    analysis for the most part.

5          So what the plaintiffs want is two years from the

6    filing of a lawsuit without them having to demonstrate

7    whether and how they could prove this case by common

8    proofs.  And in light of the case law, we think that's

9    highly inappropriate.

10         The Court and Lockheed Martin, they're entitled to

11   know whether they'll be preparing for a trial of one or a

12   trial of a million, literally.

13         And under their schedule, importantly, Judge, if

14   the Court was extremely expeditious in its ruling on class

15   cert, we wouldn't know until the first quarter of 2023 what

16   we're trying.

17         That would be after mediation, Your Honor, which

18   would mean mediation would be useless in this case.

19         It would be after the close of discovery, which

20   means we couldn't tailor any discovery or expert reports to

21   the decision that this Court made on class.  So the experts

22   would be relegated, Your Honor, to having to deal with an

23   80-square mile area, you know, a circle in every direction.

24   Whereas, if, for example, we're dealing with Tangelo Park,

25   the subdivision at issue, you're dealing with one direction

1   .8 miles from the facility.  You know, vastly different.

2         We think a year is reasonable.  That's just to the

3   close of briefing, not to any oral argument the Court might

4   want to hear or a resulting decision.

5         But we think, you know, they did a pre-suit

6   investigation, hopefully, Your Honor.  They've done a town

7   hall meeting now and asserted they have experts already.

8   And we think a year is more than reasonable for them to

9   demonstrate to this Court whether common proofs are

10  appropriate in this case.  We think not.  Of course, they

11  think they are.  But a year to prove to the Court that they

12  are, we think, is reasonable.

13        And the circuit courts, Your Honor, if I may for

14  just a moment, have recognized that -- the Eleventh Circuit

15  in the Vega versus T-Mobile case recognized that delaying

16  class certification, and I quote, Can create an

17  unnecessarily high risk of introducing needless and

18  unavoidable complexity to an already complex case.  That's

19  why Rule 23 demands an early consideration of class

20  certification, including its practical limitations.

21        And the circuit courts have also counseled that --

22  you know, it's clear to us, Judge, that they want to delay

23  class cert to hold Damocles sword over the head of a

24  respected defense contractor.

25        The Second -- I'm sorry, Seventh Circuit said,

```
 1    Delaying class certification creates pressure for

 2    settlement that may be disproportionate to the actual

 3    merits of the case, Thorogood versus Sears case.

 4         The Eleventh Circuit has said, Once one

 5    understands that the issues involved in the case are

 6    predominantly case-specific in nature, it becomes clear

 7    that there is nothing to be gained by certifying the class;

 8    nothing, that is, except the blackmail value of a case

 9    certification which can aid the plaintiffs in coercing the

10    defendant into a settlement.

11         So a two-year period of Damocles sword over

12    Lockheed Martin's head when the case law in this district

13    indicates it's next to impossible to certify one of these

14    classes, it's just too long in our opinion.  And it's going

15    to result, Judge, in the tail end of this case, forgive my

16    vernacular, Judge, but a train wreck.

17         This Court would be dealing with dispositive

18    motions; Daubert, which will clearly be filed; and Rule 56,

19    which will clearly be filed by Lockheed Martin in both

20    cases.  It will be dealing with joint pretrial statement in

21    San Martin; all other motions, including motions in limine

22    in San Martin; the final pretrial conference and a trial in

23    San Martin; and then rolling right into the trial in

24    Grayson.  And it's just too much.

25         It will be about a six-month period, Judge, where
```

1    all of that will occur.  And that's just not an orderly

2    conduct of the case in our judgment.

3              THE COURT:  All right.  Thank you, Mr. Weinstein.

4              MR. WEINSTEIN:  Thank you, Judge.  Appreciate your

5    patience.

6              THE COURT:  Mr. Morgan, I need to hear from

7    whoever on your team is best equipped to fill me in on

8    what's required in order for you all to file your motion

9    for class certification.  So whoever that is on your team.

10             I need one minute.  I'll be right back with you.

11             (Pause in proceedings.)

12             THE COURT:  All right.  Mr. Morgan, I'm ready.

13             MR. MORGAN:  Your Honor, also, just after thinking

14   about your question, I think there is what is known in your

15   proposition of the liability with at least a general

16   causation argument.  I think that the overlay is going to

17   be almost 100 percent.

18             I don't see how we can separate those two things.

19   Because we will be talking about air modeling.  We'll also

20   be talking about census data.  We'll also be talking about

21   hydrology.  And there will be a lot of these issues that

22   will be clicking.  I think there has to be a general

23   causation piece into that liability.

24             But separating the specific causation out for the

25   individualized injuries versus the medical monitoring,

```
 1    assuming we get to that point, Your Honor, I do agree that
 2    that would be an efficient way to proceed, even though we
 3    hadn't thought about it before.
 4         THE COURT:  Well, I'll just tell you just so that
 5    you all know, I'm going to come up with -- depending on
 6    what the posture of the case is at the time it gets ready
 7    to be tried, I'm going to come up with some solution -- I
 8    started to say creative.  It may not be creative.
 9         But some solution that does not result in the same
10    experts testifying in the same -- on the same issues in two
11    separate cases, whether that means, you know, impaneling
12    two juries to hear it at the same time or some other -- or
13    bifurcating it in some way so that we have a liability
14    determination and then we move on to the individual
15    determination of causation and injury with respect to the
16    individual plaintiffs.
17         But I take Mr. Weinstein's point, which is the
18    reason I want to hear from you all on class certification,
19    that the class cert issues, at least early on, are going to
20    be the driver of the case, at least in terms of trying to
21    figure out whether or not from a trial standpoint we're
22    going to be trying a class action or whether we're going to
23    be trying -- I mean, if we're trying 13 individual injury
24    claims, obviously the liability case still looks like the
25    liability case, but it's more manageable in terms of
```

```
 1    knowing what the after -- or the other component is.

 2          And then it does seem to me that we need to start

 3    to get our arms around what's going to be required for you

 4    all to make your determination that you're ready to file

 5    your class cert motion and to build in the time that I'll

 6    need to make a determination as to whether or not the

 7    Rule 23 criteria have been met.  And if so, what does the

 8    class look like, how large is it, and how manageable is the

 9    problem going forward.

10          So I don't know who your --

11          MR. MORGAN:  Mike Ram, Your Honor.

12          THE COURT:  Okay.  That's fine.

13          MR. RAM:  Good afternoon, Your Honor.  Michael

14    Ram.

15          THE COURT:  Good afternoon, Mr. Ram.

16          MR. RAM:  Our class certification schedule

17    coordinates the two cases much more closely.

18          THE COURT:  If I can interrupt you for a second,

19    Mr. Ram.

20          MR. RAM:  Yes, Your Honor.

21          THE COURT:  I don't really want to talk about your

22    competing proposals yet.  I'd like for you to tell me what

23    do you need to do to be prepared to file your motion for

24    class certification?

25          MR. RAM:  Yes, Your Honor.
```

1         We need to take the same amount of liability

2    discovery that's going to happen in the personal injury

3    cases by and large because we're going to need experts at

4    the class certification stage.

5         We're going to need experts who can prove to

6    Your Honor how we're going to demonstrate liability on a

7    class-wide basis.  We're going to need experts who can

8    prove to Your Honor how everybody in this class is facing

9    medical risk.

10        We're going to need to take discovery to sort out

11   the issues with class definition that counsel for Lockheed

12   has mentioned.  As Your Honor is, of course, aware, we can

13   modify the class definition as we go along.  But we're

14   going to need discovery for all of that.

15        And that's why under our proposal the one set of

16   expert disclosures, the parties have agreed that would have

17   the same expert deadlines for trial in both cases.  And we

18   think that we need that expert deadline, which we've agreed

19   on for trial, for our class certification motion because so

20   much of it, as Your Honor has already emphasized, is going

21   to overlap.

22        And that's why we think if we file for class

23   certification when discovery closes on September 30th,

24   2022, there will be plenty of time for the Court to rule on

25   class certification and send class notice before what the

1    parties have proposed to be a July 2023 trial date.

2           THE COURT:  Well, here's the problem I have with

3    that, is it runs counter to the Local Rules with respect to

4    the filing of a motion for class certification.  It

5    ignores, or at least doesn't respond in a meaningful way

6    that I can appreciate, to Mr. Weinstein's, I think,

7    legitimate concerns that the certification of the class is

8    going to be the driver of much of the litigation in the

9    case early on.

10          And until that's decided, if we don't do that

11   until the close of all of the discovery, then we, in

12   essence, have a class action that's pending for two years

13   plus under your schedule, at least as I look at it.  I may

14   be wrong in terms of my rounding of the dates.  But for a

15   long time before we know what the class is.

16          I'm not sure I understand why it is you think you

17   need to have the entire discovery period available to you

18   to make a determination as to whether or not the case can

19   move forward as a class action.

20          So I'm going to give you another shot at that and

21   see if I can get something from you that helps me

22   understand your position.

23          MR. RAM:  Thank you, Your Honor.

24          Lockheed has acknowledged, we've all acknowledged

25   that there is going to be a need for expert testimony in

```
1   this case.  And there's going to be a great deal of

2   discovery that we're going to need so that we can properly

3   present to Your Honor experts who can show you that we can

4   prove our case on liability on a class-wide basis.

5          There's also going to be a lot of discovery so

6   that we can prove to Your Honor that we can show that each

7   member of the class, however it's defined at the time of

8   class certification, is facing a medical risk.  That's

9   going to overlap tremendously with the discovery that's

10  occurring in the personal injury cases.

11         And, Your Honor, I've been doing this for 38 years

12  now.  And when I started out, all you really had to do was

13  to demonstrate to the Court that the Complaint posed common

14  issues, but as Your Honor is well aware, in the

15  intervening years, the Supreme Court has made it clear that

16  we basically have to go a long way towards demonstrating

17  our case on the merits in order to show you that we can

18  then prove that case on the merits with common evidence.

19         And here, as all the parties acknowledge, that's

20  going to include hydrologists and perhaps epidemiologists.

21  And we need to get the facts to give to those experts, and

22  then we need to have those experts prepare reports.

23         And we would submit, Your Honor, that it would be

24  far more efficient to have one set of expert disclosures on

25  the timeline that the parties have agreed for the trial
```

1    expert disclosures rather than to have a premature,

2    inefficient disclosure deadline as Lockheed is proposing

3    and then just have the class case sit around on ice for a

4    year or more after class certification and before trial.

5            MR. MORGAN:  Your Honor, if I may add.

6            THE COURT:  Yes.

7            MR. MORGAN:  In discussions with defense counsel,

8    it has been made abundantly clear that the discovery in

9    this case is going to be extremely voluminous once we even

10   are able to ascertain that discovery.

11           We've started talks as far as ESI, the protocols.

12   And, you know, speaking with defense counsel, most of this

13   documentation is going to be paper documentation.

14           So if the best efforts were made to even obtain

15   that discovery, we're talking about June, July, before we

16   even are in the place where we can really start reviewing

17   that.

18           And at that point in time, expert reports will be

19   due in that class case on the 2021 schedule.  It makes it

20   nearly impossible in a case of this scope with that type of

21   discovery to be able to prepare an expert in essentially

22   nine months for up to that.

23           We have what is available publicly from the EPA,

24   but we by no means have all the information the defense

25   does.  It's a complete asymmetry of information as far as

1   what the defense has versus what the plaintiff has.

2        THE COURT:  So, Mr. Ram, let me try one more time.

3   And then I'm going to hear from Mr. Weinstein again.

4        But other than what you've already told me in

5   terms of the generalized -- so I'm confident that the

6   plaintiff has already got experts retained who have done

7   your appropriate Rule 11.  You've done your appropriate

8   Rule 11 inquiry with respect to the liability issues.

9        And I appreciate the comment that Mr. Morgan added

10  that there's some asymmetry of information with respect to

11  perhaps, you know, internal documents, internal policies,

12  internal decision-making that may have been conducted by

13  Lockheed over the years.

14        I also appreciate the fact that there are many

15  years in your arguing that Lockheed was engaged in

16  potentially tortious conduct.

17        But tell me as discreetly as you can, what does

18  your discovery program look like going forward.  In other

19  words, what is it that you think you need from Lockheed in

20  order to provide it to your already retained experts to

21  move the case forward?  I'm trying to get my arms around

22  what it looks like in terms of your discovery plan.

23        And I'm assuming, obviously, that you're going to

24  have some document production requests.  I'm assuming that

25  you're going to have a request for them to identify certain

1  individuals that might be knowledgable about their toxic

2  waste disposal and their compliance with various

3  governmental programs.

4          I'm assuming that you're going to have some

5  interest in talking to people in their department over

6  the years that may have been responsible for monitoring the

7  distribution of toxic materials and recording any negative

8  consequences that those might have had, either in the soil,

9  air, or water around the plant.  Those things seem to be

10  fairly intuitive.

11          But I'm just having a hard time understanding this

12  -- I guess this sort of generalized description that I'm

13  getting from you about what you need to do and why it needs

14  to be so extensive with the discovery period and why it

15  needs to be so extensive with the disclosure of liability

16  experts which is, frankly, contrary to the norm.  I mean,

17  that's not the way -- that's not the way we do it

18  ordinarily.

19          And so I've not heard any compelling reason from

20  you as to why I should structure this case so markedly

21  differently from the way that I would ordinarily structure

22  it.

23          And, again, I don't profess to know the case like

24  you know it, of course, or like your colleagues know it.

25  But I'm not understanding what it is you're trying to

1 describe to me.  Perhaps it's my failing.

2   MR. RAM:  It's my failing, Your Honor.  I'd also

3 apologize that it's hard for me to hear everything you're

4 saying.  The volume is sometimes perfect and sometimes so

5 quiet I can hardly hear you.

6   But I get the gist of what you're asking me.  And

7 let me focus in on a specific example.  Let's say we're

8 going to use a hydrologist among our experts at the class

9 certification stage.

10   So that hydrologist is going to have to

11 demonstrate to Your Honor that we can prove liability or a

12 piece of liability on a class-wide basis.  And in my

13 experience, to do that effectively, we have to have

14 essentially the same expert report that we would have for

15 trial, which means we're going to have to take all of the

16 discovery that Mike Morgan was referencing and that

17 Your Honor was describing.  We're going to have to get all

18 the documents and going back for 35 years.

19   And as counsel for Lockheed has said, for right

20 now a class that has quite a number of people in it,

21 although I've had classes that are much broader in other

22 contexts.

23   So we go all the way back, get all those

24 documents, and then we have to take depositions of Lockheed

25 employees, of former employees, of people around the plant,

1    to try to come to a sufficient grounding in the evidence

2    where we can demonstrate to Your Honor that everybody in

3    this class is subject to a medical risk that requires

4    medical monitoring based on what has happened over the

5    course of many, many years.

6         So by the time we have that -- this is just one

7    expert I'm focusing on, Your Honor.  We will have

8    essentially completed this expert report (audio gap).

9         And then, similarly, if we've got another expert

10   who's going to say that everybody in this class is facing a

11   sufficient medical risk, that she or he ought to be

12   monitored by a medical professional as the Florida Statutes

13   contemplate, then we're going to have to again look at

14   35 years' worth of exposure.

15        And we're going to have to either find the

16   specific data that Lockheed may or may not have ever even

17   taken and perhaps hasn't maintained.  And if not, we're

18   going to have to do expert modeling perhaps to show to the

19   Court's satisfaction that everybody in this class is facing

20   a sufficient medical risk that he or she should be

21   medically monitored.

22        And I've got to tell you, Your Honor, to the

23   people in this class, it's a very, very important issue.

24   And so we feel like we've got a very heavy responsibility

25   on our shoulders to get the evidence that we need to

1    properly present expert testimony on these issues that are,

2    in my experience having done this a lot, is going to be

3    very, very similar to the final expert report that you

4    would have for trial.

5         And so we could get all of that evidence marshaled

6    that Mike Morgan was talking about and that Your Honor was

7    talking about, and then we've got to get it in front of an

8    expert.

9         And to suggest that it's going to take us until

10   September 2022 to do that, Your Honor, when here we are,

11   you know, during COVID at the end of 2020, I don't think

12   that that is unreasonable.

13        And as far as the Local Rules, I think Lockheed

14   acknowledges that the standing rule, it just wouldn't make

15   any sense for our case anyway.  I think Your Honor will

16   appreciate that.

17        So for all those reasons, we're asking the Court's

18   indulgence to let us get the evidence that we don't have.

19   Lockheed has it.  We don't have it.  And then properly

20   present it to our experts and properly demonstrate to you

21   how we can prove this case on a class-wide basis.  And also

22   along the way, take discovery and work with experts so that

23   we can better perhaps refine the contours of the class

24   definition.

25        THE COURT:  Okay.  Well, I'm going to give

1    Mr. Weinstein an opportunity to respond if he wants to or

2    has anything else he wants to share with me.

3         But I will tell you that I don't see the purpose

4    of Rule 23 being met by extending the discovery schedule

5    for class certification as far as you want me to do it.  I

6    just don't see myself doing that.

7         I certainly acknowledge that the current

8    provisions, I think it's 90 days in the Local Rule under

9    what's currently 404 would be appropriate.  That's not

10   appropriate either.

11        As often happens, I guess, is probably something

12   in between where you guys are.  I'm going to have to work

13   on this myself now that I have a better understanding of

14   what you all are trying to accomplish.

15        But my own view of Rule 23 -- and the new Local

16   Rules, by the way, which will be adopted here shortly,

17   don't speak to the local -- I was asking my clerk to check

18   and see what the new Local Rules said on class

19   certification.

20        And I think an acknowledgment of the fact that we

21   -- and I say "we" meaning at least my colleagues here in

22   the Middle District and I think probably throughout the

23   country -- have long recognized that we've got to be

24   flexible in terms of setting the schedule for class

25   certification depending on the magnitude of the class, at

 1    least the initial threshold presentation of what does the

 2    class look like, how hard is it to define the class, how

 3    much time is appropriate to give the plaintiff the

 4    opportunity to try to establish the criteria.

 5         I guess where you and I maybe disagree, Mr. Ram,

 6    is that maybe you're just anticipating difficulties.  You

 7    seem to be more in the camp of at least having the case

 8    completely packaged up and ready to establish liability as

 9    being the threshold to meet your responsibility to show

10    that the Rule 23 requirements for certifying the class have

11    been met.  I'm not sure I know of anybody, myself included,

12    that holds the plaintiff to that sort of a requirement,

13    that puts the bar that high in terms of establishing the

14    elements of the class.

15         But I'm going to give Mr. Weinstein an opportunity

16    to give me some additional comments, if he has any, from

17    the defense point of view.

18         And then I think what I'll do is probably retire

19    with your materials and take a little while to work up a

20    schedule in both of these cases that I think does what I'm

21    motivated to do, which is to make sure we move the case

22    along with relative dispatch, recognizing that it's a

23    large, complex case.  But we have those.  So it's not

24    uncommon for -- to have those kinds of cases.  And move

25    them along in a way that's efficient and expedient and

```
1    consistent with the application of the rules of federal
2    procedure, which are designed to achieve that result.
3           Probably you all are going to be able to work
4    together cooperatively enough that you won't need my help
5    in terms of doing some of the things that Mr. Weinstein
6    mentioned, which is making sure that you notice the
7    depositions in both cases and things of that sort so that
8    there's not a lot of duplication of effort.
9           But I will tell you I'm not going to be very --
10   I'm not going to be tolerant of that.  So I'll just put
11   that out there for all of you.  I mean, there's no reason
12   that we ought to be duplicating effort in the class case
13   that's got equal application or at least reasonable
14   application in the individual case.
15          And so those cases ought to be noticed together,
16   and you all ought to be able to move these cases along.
17   I'll use the word in tandem.  Maybe not in yoke.  But
18   certainly in tandem as they go along.
19          So I initially was resistant when I came in here
20   of the notion of entering two different case management
21   scheduling orders and having these cases move on two
22   separate tracks.  I'm at least partially persuaded that
23   that might be necessary and maybe not totally inefficient.
24          So I'm going to repair my quarters and spend some
25   time on this trying to work out what I think is a
```

```
 1   reasonable schedule for both of these cases, with the
 2   understanding that, as I told you at the outset, it's very
 3   unlikely once we get to the end of the road that I'm going
 4   to try two separate cases with 60, 70, or 80 percent of the
 5   case being essentially identical.  So I'm not going to do
 6   that.
 7          And so you all might be thinking of ways that you
 8   want to propose that I might not think of to accomplish
 9   that objective once we get to that point.  But in the
10   meanwhile, I'll see about working on a schedule that's
11   probably somewhere between what you all requested.
12          Mr. Weinstein, you're not obligated to speak, but
13   I didn't want to give you -- I didn't want to cut you off
14   without giving you a chance to respond if there's anything
15   you wanted to respond.
16          MR. WEINSTEIN:  If I may briefly, Your Honor.
17          THE COURT:  Yes.
18          MR. WEINSTEIN:  Excuse me one moment, Your Honor,
19   while I get a microphone shield.
20          We appreciate this is going to take some thought,
21   and we appreciate your time in that regards.
22          Some context about this site, I think, is
23   important.  The first missile, the HELLFIRE missile, other
24   historical weapon systems that have helped keep this
25   country safe have been made out there since the 1950s.
```

1    Today, Your Honor, there is sophisticated fire control

2    systems for -- and other systems for the F-35, the most

3    sophisticated fighter plane on the planet, attack

4    helicopters were all made out there.

5          But, Your Honor, environmental laws from the

6    1950s, to the extent that they -- they don't look today any

7    more than a computer sitting in front of Your Honor looks

8    like a 1950s computer.

9          What really happened at the site and what the

10   evidence will show is Lockheed operated in compliance with

11   environmental laws as they existed at the time.  And when

12   they changed, Judge, as they did dramatically in the '70s

13   with the advent of the CERCLA, RCRA, the Clean Air Act,

14   Clean Water Act, you know, the effects on the ground were

15   overtaken by the law.

16         And Lockheed Martin has spent millions and

17   millions and millions of dollars remediating that facility

18   under the supervision of government agencies.

19         All of that information is in the public domain,

20   Judge.  Every time there's a measurement taken at that

21   facility, it ends up in a biannual report and that biannual

22   report is filed.

23         And, in fact, it's accessible online.  We have had

24   candid conversations with opposing counsel about assisting

25   them with looking for this information.  But there are no

```
 1   mysteries here with respect to the environmental issues,
 2   Judge.  They're all public record.
 3           And it's important to note as well, Judge, that in
 4   all that time, neither EPA nor FDEP ever sued Lockheed,
 5   never instituted and enforced -- a formal enforcement
 6   proceeding.  And that's because the company, again,
 7   voluntarily stepped up to the plate and cleaned the system
 8   up, this facility up.  And it's made tremendous progress.
 9           And it's interesting, Judge, and I have to note
10   that their theory of liability is those remediation
11   efforts, they claim, if it put VOCs into the air and caused
12   the contamination of these neighborhoods.  We hotly dispute
13   it, Judge.  But their accusation is our remediation efforts
14   have caused the harm.  Not true.
15           Judge, the schedule we're asking you to adopt here
16   and the approach is the same approach that this Court
17   adopted in the Orlando Utilities Commission case, Irizarry.
18   And it worked.
19           And, Judge, if there was a single time that we
20   were before you or the magistrate judge in Irizarry on a
21   discovery dispute, I can't think of it.  I don't think it
22   happened once.  You know, we're not difficult to get along
23   with.  We're not going to be difficult to Morgan & Morgan
24   about this.
25           We consented to their motion to amend.  We
```

1    consented to the motion to appear by Zoom today.  But this

2    notion that it's going to take them two years to do -- put

3    together a case that they should have put together before

4    they filed a lawsuit making these accusations, it's just

5    wrong.

6         And the Court discerned the primary argument here,

7    which is that the class drivers, the ascertainability,

8    the class area, you know, all of those things are going to

9    determine what we're going to have to try, if anything, at

10   the end of the day.

11        And if I may just briefly, Judge, if you look at

12   Judge Conway's opinion in Zehel-Miller, which is at

13   223 F.R.D. 659, Judge Conway's -- and I just want to

14   emphasize why it's so important to strip down this class to

15   its real issues and get this out of the way.

16        Judge Conway said:  State laws generally require a

17   finding that a plaintiff's exposure to a toxic substance

18   was due to a defendant's negligence.

19        That's true in Florida, Judge.  It's the third

20   element in the Petito case, which is the seminal case in

21   medical monitoring in Florida law.

22        She goes on to say:  A finding of negligence is

23   inextricably intertwined with individual issues.  For

24   example, negligence claims depend on individual facts,

25   whether there's a breach of a duty, the foreseeability of

 1    the harm, what the defendant knew, when the defendant knew

 2    it, whether the defendant acted reasonably based upon the

 3    knowledge it had at the time.

 4         And she goes on:  These issues, as well as

 5    individual questions concerning patient characteristics --

 6    the plaintiff characteristics, really -- medical history,

 7    physician involvement, dose, causation, and comparative

 8    negligence eviscerate any notion that common issues

 9    predominate.

10         So, look, we're not trying to get ahead of our

11    fees, Judge, on the merits of this case.  But this is such

12    an uphill climb.  Again, we can't find a single medical

13    monitoring case certified by a federal court in Florida.

14         We should embark upon a reasonable schedule but

15    one that quickly separates out these issues.  And we may

16    find, Judge -- and we believe we will at the end of the day

17    -- we're not going to be trying a class action.  We're

18    going to be trying a very reasonable case with

19    13 plaintiffs in a mass court, 1 plaintiff in Grayson.

20    They could easily be consolidated into one trial.  And we

21    could be done in a couple of weeks.

22         But we're entitled to know that, Your Honor.  And

23    the Court is entitled to know what it's going to try as

24    well.

25         And that concludes my argument, Judge.  And again,

```
 1    I appreciate your patience.

 2             THE COURT:  All right.  Thank you, Mr. Weinstein.

 3             In case the parties have any concern about it,

 4    I've lived here all my life.  I know Lockheed Martin well.

 5    I know the work they've done.  I have no preconceived

 6    notions about them.

 7             I also know nothing about the facts of the case.

 8    I know that if Ms. Saperstein were here, she would probably

 9    not agree with your assessment of Lockheed's compliance

10    with the governmental rules and regulations.  She would

11    probably also not agree that she ought to rely upon the

12    government to bring a claim on her behalf if, in fact,

13    Lockheed's efforts were deficient and responsible for the

14    birth of her deformed child.

15             So I have no views about that either way.  I know

16    that if she were here or if her lawyers were given the

17    opportunity to make an argument on her behalf, I suspect it

18    would be compelling as was yours in defense of your client

19    Lockheed, which is what I would expect of the accomplished

20    lawyers I have before me.

21             So I'm going to work right now on getting the

22    schedule together so that we'll get to the point where

23    everybody will have a chance to air their case, and I'll

24    get an opportunity to hear it and make the appropriate

25    decisions about it.
```

1              So I know much more about it now than I did when I

2     walked in here, which was the purpose of me getting you all

3     together.  And I appreciate you informing me about your

4     respective positions.  And as I said, I'll get to work

5     trying to come up with a schedule that I think is fair to

6     both sides and gives you, Mr. Weinstein, an opportunity to

7     understand the size of your case and the magnitude of the

8     exposure faced by your client.

9              It gives Mr. Morgan and his colleagues an

10    indication of what the scope of their potential recovery is

11    going to be and whether they're going to have a class

12    action or not and, if so, what it will look like in a way

13    that I can manage.

14             And that's my job right now is to be a manager and

15    a facilitator and to try to move the case forward to give

16    you all a chance to get it into a posture where you can

17    make these powerful arguments that I know you both have

18    about the merits of the case.  So we'll get there.

19             As I said, I'm now much better armed than I was

20    when I came in.  So I appreciate the information.

21             Anything else that I can do for the plaintiffs

22    while we're here, Mr. Morgan?

23             MR. MORGAN:  Just one thing.  And I'm hesitant to

24    bring it up.  But I think in light of your comments

25    regarding focusing on the class action, I do think it's

```
 1   relevant to your decision and what you're going to do.  And
 2   that is this concept that the class is the driver of this
 3   case.
 4        The first 13 cases that were filed on the
 5   individual side had a common nexus for causation, being the
 6   Golf Channel.  But to say that we don't have more cases,
 7   injury cases, that are going to be filed in the first
 8   quarter of next year and different groups that would relate
 9   to specific causation would not be fair to this Court to
10   not know that.
11        And so currently we have individually signed about
12   just north of 1100 individual plaintiffs.  And so they will
13   be filed.  You know, there's no statute of limitation that
14   we're worried about right now.  But we are trying to put
15   them in buckets that make causation easier.
16        So I just want the Court to know there are other
17   cases that are out there and that it's not all about the
18   class work.  So I just thought it was relevant based on
19   your comments.
20        THE COURT:  That's useful information.  I
21   appreciate having it.  And, you know, that may change the
22   complexion of things.  But right now, this is the universe
23   I have to deal with.  And so I'll go forward from here.
24        But as I said before, you all need to put your
25   creative caps on in terms of complex case management.
```

1    Because as I said before, one of the things that I know is

2    not productive is having the same experts show up in the

3    same courtroom.

4          You know, I have, for good or ill, a lot of

5    experience dealing with almost 5,000 of these individual

6    Engle tobacco cases that -- I don't suggest that these

7    cases are alike necessarily, but the management problems

8    that go along with that sort of litigation is not something

9    that's foreign to me.

10          And I'm not unwilling to think outside the box a

11   little bit with the help and input from the lawyers of ways

12   that we can manage these cases in an appropriately fair but

13   efficient way.

14          So I just want to encourage you all to be thinking

15   about that as we go forward.  And, you know, if there are

16   other lawsuits, then there are other lawsuits.  And that's

17   what we're here for.  But we'll manage them, some way or

18   another.

19          But the first thing to do is first things first.

20   Let's get a schedule in place and see how we do in terms of

21   trying to keep to it.  Okay?

22          Anything else, Mr. Weinstein, I can do for you or

23   your group while you're here?

24          MR. WEINSTEIN:  No, sir.  Thank you for your

25   patience, Your Honor.

```
 1              THE COURT:  Thank you.
 2         Happy holidays to all of you.  I hope soon that
 3    we'll be able to get together without these face coverings.
 4    Maybe that's being unreasonably optimistic, but I hope so.
 5         I will tell you for those of you that are
 6    appearing by Zoom, I'm happy to do it, I'm happy to
 7    accommodate you.  I will tell you that I don't like it one
 8    bit.  And I know that makes me a dinosaur, I guess.
 9         But for me, having the lawyers here, getting a
10    chance to interact with you, hear your arguments, being
11    able to be spontaneous about, you know, calling on you and
12    asking you questions, it's the way I learn about your case
13    is by asking you questions and getting you to give me
14    feedback.
15         I just have a lot of difficulty doing that on
16    Zoom.  Maybe that's a sign of my generational gap.  I don't
17    know.  But I don't love it.  I know a lot of my colleagues
18    have been saying how wonderful it is and they're going to
19    stick with it even after the pandemic is gone.  I can
20    promise you I'm not in that group.
21         So for whatever it's worth, as soon as we can come
22    back in sort of more normal operations, I will be excited
23    to have -- obviously, will be excited for the health
24    reasons, of course, being paramount.  But in terms of
25    practical court operations, I hope we can get back to what
```

```
 1   I would call normal, the old normal.

 2            But in any event, happy holidays to you all.  It's

 3   good to see you.

 4            Mr. Morgan, my best to your family.

 5            Mr. Weinstein, to all of you.

 6            Mr. Hopper.  Mr. Hopper is one of my former law

 7   clerks.  Always nice to have him back in the fold, at least

 8   for a little bit.

 9            So I'm glad to see you all and I hope you all have

10   a nice holiday.  I'll see you back here sometime after the

11   first of the year.

12            (Proceedings adjourned at 2:24 p.m.)

13                              * * * * *

14

15                      C E R T I F I C A T E

16

17            I certify that the foregoing is a correct

18   transcript from the record of proceedings in the

19   above-entitled matter.

20

21   November 29, 2022

22

23        s\  Amie R. First
     Amie R. First, RDR, CRR, CRC, CPE
24   Federal Official Court Reporter
     United States District Court
25   Middle District of Florida
```